# UNITED  STATES  BANKRUPTCY  COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Re: | **F I L E D** ) | Chapter   7 |
| | ) | |
| **Anil Chugh** | **UNITED STATES BANKRUPTCY COURT** ) | **Case No. 23-BK-16790** |
| **Debtor** | ) | |
| | **NORTHERN DISTRICT OF ILLINOIS** ) | |
| _____ | ) | |
| | **SEP 25 2025** ) | **Hon. Judge Janet Baer** |
| **Zafar Sheikh** | ) | |
| | **JEFFREY P. ALLSTEADT, CLERK** ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **Adversary Case No.** |
| | ) | **24 – A - 0200** |
| **Anil Chugh, Vidhu Chugh, Ankur** | ) | |
| **Chugh, Ashwin Chugh, Unknown Owners** | ) | |
| **& Recipients of Avoidable Transfers/Assets** | ) | |
| | ) | |
| **Defendants** | ) | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT OBJECTING TO

## DISCHARGE OF DEBTOR ANIL CHUGH, FOR AVOIDANCE

## OF FRAUDULENT TRANSFERS AND PREFRENTIAL

### PAYMENTS TO INSIDERS

**NOW COMES THE CREDITOR,** Zafar Sheikh, and files this Adversary

Complaint (the "Complaint") objecting to the discharge of Anil Chugh (the

"Debtor" or "Defendant") pursuant to 11 U.S.C. § 523(a) (2)(A),  requesting the

determination that certain debts of the Debtor Anil Chugh, in particular the

judgement debt owed to Sheikh of over $320,000.00, inclusive of interest,

1

entered by a Cook County Chancery Court be excepted from discharge pursuant to 11 U.S.C. §§ 523(a) (2) (A) and 727 (a) (4) (A) of the Federal Rules of Bankruptcy Procedure. Plaintiff also seeks to void fraudulent transfers made by Debtor Chugh to insiders including to his Wife Vidhu, and sons Ankur and Ashwin, under the Bankruptcy Code and Illinois Fraudulent Transfers Act (IUFTA: 740 ILCS 140/1), and voiding and reclaiming preferential payments made to his attorneys and some other as yet unknown parties. In support, Sheikh avers as follows:

## P A R T I E S

1- Plaintiff Sheikh is a judgement creditor of Chugh, and currently resides in Austin, Texas. Loan was incurred by Chugh when Sheikh lived in Illinois.

2- Anil Chugh is a Debtor in the above-captioned bankruptcy case, is a serial bankruptcy filer. Anil can indeed boast of filing bankruptcy for the 4th time since his arrival in U.S. as an immigrant 30 odd years ago. Chugh resides in Oak Brook, one of the most expensive suburbs of Chicago, in a luxury estate, which he claims is owned by his son Ankur, who himself lives in Chicago in a one bed room mediocre apartment.

3- Vidhu Chugh is the legal wife of debtor Anil Chugh and resides with Chugh in Oak Brook estate. It is believed that Debtor Chugh conducts businesses under her name, maintains accounts in her name, holds properties in her name to safeguard his assets in his on-going bankruptcy scams.

4- Ankur Chugh is a resident of Chicago, Cook County and is the older son of Anil

Chugh, is an alter ego of his father Anil Chugh. Debtor Chugh conducts business

and engages in financial transactions in Ankur Chugh's name. To protect his luxury

estate in Oak Brook,  Illinois, in anticipation of filing another bankruptcy, debtor

Chugh has parked the Oak Brook luxury estate in Ankur's name.

5-     Ashwin Chugh is a resident of Oak Brook, is son of Debtor Chugh and resides at

the same luxury estate as Debtor and his wife Vidhu Chugh.

### JURISDICTION, VENUE & STANDING

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.
§ 1334(b).

6-     This adversary proceeding is being filed pursuant to 28 U.S.C. § 157(a).

7-      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(1).

8-      Venue of this proceeding is proper in this district pursuant to 28 U.S.C.

§ 1409(a), as the defendants' live in the same district where this Court is

situated.

9-     Plaintiff has standing to bring this action under 7001 of the Federal Rules of

Bankruptcy Procedures. This Bankruptcy proceeding has been commenced where

the discharge petition of the debtor Anil Chugh is pending. This Court has

personal jurisdiction over Defendants pursuant to Rule 7004(t) of the Federal

Rules of Bankruptcy Procedure.

This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § l57(b)

in which the Court may constitutionally enter final orders. To the extent this

adversary proceeding is deemed a proceeding in which the Court may not

constitutionally enter final orders absent the consent of the litigants, the

Creditor consents to the entry of final orders by the Court in this proceeding,

provided debtor agrees to this clause as well.

## **FACTUAL BACKGROUND**

10-   In 2004 Sheikh was introduced to debtor Chugh by some mutual friends. Chugh

represented that he is an investment advisor, who primarily is engaged in selling

and leasing of fuel service and gas Stations.

Chugh further represented that he had a large transaction pending in which an

Arkansas Company namely Fuel Services Mart / G & G Enterprises, who owns

29 gas stations located in Illinois is selling those gas stations to Midwest Gas

distributors for twenty nine million dollars. ($29,000,000.00).

11-   Chugh further represented that both the Sellers, Fuel Service mart/G & G and

the purchasers of those gas stations Petro mart/Midwest Oil have agreed to pay

$147,000.00 each,  in sales commissions to Chugh as a 'broker'.

12-   Chugh further represented that the Sales Contracts between G & G and Midwest

Oil have already been signed, Bank loans have been approved and the Title

companies are in the process of checking and making the Title commitments

before a final closing date could be set.

13-   Chugh further represented that it would be another 60-90 days before the closing

could take place, but co-incidentally Chugh had come across an attractive

investment in which he immediately needs $200,000.00, and if he waits another

4

60-90 days for gas station closings to access his commissions, he may loose the deal.

14-   Chugh asked if the Plaintiff could lend him $200,000.00 against the commissions that were owed to Chugh from G & G and Midwest Oil. Chugh produced sales agreements between G & G and Midwest which demonstrated that indeed Chugh acted as an intermediary between G & G and Midwest Oil and was instrumental in putting the transaction together. Documents further indicated that both parties owed sales commissions to Chugh for putting the deal together.

## RELYING OF DOCUMENTS PRODUCED BY CHUGH, PLAINTIFF AGREES TO ADVANCE MONEY TO CHUGH AGAINST ASSIGNMENT OF COMMISSIONS

15-   Relying on the documents produced by Chugh, Plaintiff agreed to advance money to Chugh against the commissions that Chugh was owed by the G & G and Petro Marts. Thereafter Both Plaintiff and Chugh met their respective attorneys and agreements were reached and signed to lend money to Chugh that he had related was needed for 'urgent investments'.

16-   One of the agreements Chugh signed on 9/24/2004 was a promissory note in favor of Sheikh promising to pay back to Sheikh the monies advanced to him no later than 1/31/2005. (Exhibit A).

17-   Chugh also issued a Power of Attorney on 9/24/2004 in favor of Sheikh authorizing him to act for and on his behalf to collect the commissions that were owed to him by

the G & G Enterprises. (Exhibit B).

18-    Also on 9/24/2004 Chugh signed an Affidavit which certified that G & G and

Midwest/Petro mart owed him commissions that he was assigning to Sheikh.

In addition the **Sworn Affidavit signed by Chugh also stated:**

"That today the 24th of September 2004, I have assigned the total amount
owed to me by Petro Mart Inc. and Fuel services Mart Inc., which comes to
Two hundred thirty four thousand and seventy five dollars. ($234,075.00) to
Mr. Zafar Sheikh. That this assignment is irrevocable and cannot be
cancelled, revoked, forfeited, encumbered or otherwise altered or interfered
by me and I have abandoned and surrendered all rights and remedies
available to me under the contract that I have with Petro Marts Inc. and Fuel
Mart Inc. (G & G Enterprises) and have transferred and assigned all those
rights, remedies and benefits to Mr. Zafar Sheikh". **(Exhibit C: Article 6).**

**Sworn Affidavit further stated:**

"I additionally state that I have not assigned, pledged, diluted, disposed of or
otherwise encumbered in any way or form the said amounts to any other
individual or entity any of the rights, remedies or amounts due and owed to me
by either Petro Marts Inc., or Fuel Services mart Inc., (G & G Enterprises).

**(Exhibit C: Article 7).**

Other than that, Debtor Chugh also signed a document styled as "Total

assignment of Commissions and Monies Owed" in favor of the Plaintiff,

which assigned all commissions that were owed to Chugh from the gas

station transaction to this Plaintiff. (Exhibit D).

Few weeks thereafter when Sheikh learned that the transaction between Petro

Marts and Fuel Services Mart had been consummated, and commissions

owed to Chugh had been earned as per the contracts shared by Chugh, Sheikh

decided to approach Fuel Services mart and requested them to transfer him

the commissions that were owed to Chugh for the sales transaction. Fuel

Service Mart was also sent all assignments and related documents that had

been entered between debtor Chugh and the Plaintiff. Fuel Services mart

upon receiving documents and a demand letter from Sheikh, notified Sheikh

that they did not owe any commissions to Sheikh, since Chugh had already

received his commissions that were owed to him under the contracts. G & G

also sent Sheikh copies of "Bill of Sale and Assignment" which indicated that

prior to assigning his commissions to Sheikh on 9/24/2004, Chugh had

already assigned his commissions to G & G Enterprises a week earlier on

9/17/2004, and had cashed out all his commissions that were owed to him based

upon the sales transaction. (Exhibit E). In other words, Chugh had already received

all commissions owed to him for the sale of the gas stations a week before he

assigned his commissions to Plaintiff thus extracting $200,000.00 from the

Plaintiff on a false and fraudulent pretense, that he was still owed commissions.

Sheikh felt cheated and told Chugh that his conduct unacceptable

and he had taken advantage of him. Sheikh further told Chugh that Chugh must

compensate him within a week and pay him what he owed him, and in case

Sheikh did not get what he was cheated off, Sheikh will report the matter to the

State Attorney's office. A day before the deadline when Sheikh was to report the

matter to the State Attorney's office, Chugh called Sheikh and asked for a

7

meeting. At the meeting Chugh fell on his knees and asked for forgiveness. Chugh further confided that he was already in trouble with the law, as the State Attorney was prosecuting him for theft and embezzlement and if Sheikh too reported his latest fraud, he could be sent to prison.(Exhibit F: Indictments and Sentencing of Debtor Chugh).

19-    Later it was learned by Sheikh upon making further enquiries that Chugh had fraudulently obtained over $100,000.00 from a recently arrived immigrant and had made promises to him to sell him a gas station, which was found to be non-existent. After receiving the money from this newly arrived immigrant on false pretexts, Chugh absconded and fled Illinois but was ultimately apprehended from Arkansas and brought back to Illinois. Chugh was indicted by the Illinois State's Attorney and after a brief trial was convicted of theft and fraud. Chugh in return for leniency, promised to return the money to his victim that he had fraudulently obtained.

20-    Weeks later, Plaintiff's hard luck had him meet Chugh on a social gathering and hence to payoff his earlier victim and get a lenient disposition from the State's Attorney, Chugh who had already cashed his commissions, concocted a new fraud to ensnare Sheikh so he could compensate his earlier victim of fraud.

21-    This new fraud though helped Chugh compensate his earlier victim, at the expense of the new victim, this Plaintiff. State's Attorney upon having the earlier Chugh's fraud victim compensated, spared him with imprisonment, instead opting to put him on a five years' probation. Had Sheikh reported Chugh's deceptive and fraudulent conduct

to the State's Attorney at that time, Chugh's probation would have been cancelled

immediately and Chugh would have been incarcerated for full five years.

## CHUGH MADE REPEATED PROMISES TO PAY, BUT THOSE PROMISES NEVER MATERIALIZED

22-    Though Sheikh did not report the matter to the State's attorney but he continued to push

Chugh to pay the amounts he owed him. Chugh made numerous promises to pay but

those promises never materialized. Being frustrated, Sheikh threatened Chugh that

unless he pays the sums he owes, Sheikh will have no choice but to proceed to the

Court and secure a judgement against him. To which Chugh responded, **"be my**

**guest, go ahead and get a judgment against me. But just to remind you, I am**

**judgement proof".** At that time Sheikh didn't know, what 'judgement proof' meant,

which he is finding out now, that indeed Chugh is judgement proof, since no assets

or properties are under Chughs' name. Nevertheless by that time, Sheikh had made

up his mind not to rely on Chughs' promises, and in 2016 decided to file a lawsuit

against Chugh in a Chancery Court in Cook County. The Court in 2018 entered a

judgment in Sheikh's favor and against Chugh for $200,000.00 (Exhibit G).

## CHUGH REFUSED TO SATISFY JUDGMENT CLAIMING HE WAS INSOLVENT, BUT CONTINUED TO FRAUDULENTLY TRANSFER CASH & ASSETS IN SECRET

23-    During the intervening period Chugh, when pressed by Sheikh to satisfy the Court Judgement,

continued to claim that he was insolvent and didn't have **any money to pay.** But all

along Chugh fearing that Sheikh would seek to enforce the judgment, quietly started

shifting his assets and transferring them to his wife, sons and other insiders.

24-     In 2016, towards that end, Chugh purchased one property at 35 Steeple Gate in Oak
        Brook and parked it in his son, Ankur's name. At the same time, knowing that he will
        once more file bankruptcy, Chugh asked Ankur to designate his mother Vidhu Chugh as
        the beneficiary in case of any contingency.

25-     Designating Vidhu Chugh as the beneficiary was a calculated decision by Chugh,
        knowing that once more upon filing bankruptcy, which he anticipated, a property in his
        name alone, or in both his and his wife's name would force the estate in the hands of the
        bankruptcy trustee.

26-     Having been frustrated by Chugh for not paying the Judgment, Sheikh finally initiated
        supplemental proceedings against Chugh.  During supplemental proceedings in Cook
        County, Chugh continued to insist that he didn't have any money to pay, as he was
        insolvent. On information and belief, Sheikh knew from mutual friends and
        acquaintances, that Chugh was involved in numerous gas station projects and was
        making enough money and could have satisfied Sheikh's judgment partially or in
        whole, if he wanted to.

27-     During Cook County supplemental proceedings, Chugh agreed to provide bank
        statements for one of his companies known as 410 LLC. The bank statements from this
        one company alone showed that Chugh was making hundreds of thousands of dollars and
        was fraudulently transferring large sums of money to insiders, to his wife, to his
        sons,  and some other individuals, unknown to the Plaintiff at this time.

         It is feared that Chugh was also transferring money to other overseas accounts
        that Chugh is believed to have in India. Having been forced to provide more information
        on his business activities during the Supplemental  proceedings, Chugh started making
        offers thru Oak Brook Legal, LLC,  threatening Sheikh to back off pursuing him, or else

10

he will file bankruptcy. These threats to file bankruptcy started almost a year before Chugh finally filed his 4th bankruptcy. Chugh offered Sheikh to accept 1% of what he owed Sheikh or be prepared to even loose that upon Chugh's filing of bankruptcy. Sheikh rejected all those offers.

28-    When Chugh's threats against this Plaintiff didn't bear fruit, and heat in supplemental proceedings got unbearable, Chugh finally at the end of 2023 filed bankruptcy, and asked for protection from his creditors, including Sheikh. In his petition for bankruptcy Chugh filed false schedules and swore to untrue statements in an effort to hide his true financial condition. Other than that Chugh's fraudulent transfers are extensive and amount to hundreds of thousands of dollars. Just the luxury estate that Chugh resides in, is worth at least a million and a half dollars ($1,500,000.00). Chugh's petition for bankruptcy is fraudulent and his attempts to seek discharge against Court judgment is equally deceptive and his petition for protection from his creditors, including Sheikh's court judgement should be denied by this Court on following grounds.

## COUNT 1
### Plaintiff's Debt Should Not be Discharged as Chugh Obtained Money by Making Fraudulent Misrepresentations

31-    Plaintiff repeats and re-alleges paragraphs 1 through 30 of his complaint as though fully set forth herein. Chugh obtained money from the Plaintiff on false pretenses and by making false representations.

32-    Chugh had already sold and assigned his commissions to G & G Enterprises before he

11

re-assigned the same commissions to Sheikh. As such at the time of signing

Promissory Notes, Affidavits, Assignments of total commissions and granting

unconditional Power of Attorney to Sheikh, Chugh had already received and

cashed commissions that he was owed, and knew that there was nothing left for

the Plaintiff to collect from G & G Enterprises.

33-     Chugh made false representations and entered into agreements and signed Promissory

Notes and granted false and bogus assignments. At the signing of all these agreements,

Chugh was aware that all those contracts were false, fraudulent and deceitful. Plaintiff

reasonably relied on documents produced by Chugh showing that he was owed

commissions prior to lending money and entering into Promissory Notes and

assignment of commissions.

11 U.S.C. § 523 (a) (2) (A) states that :  A discharge under section 727, 1141,

1192, 1227 (a) 1228(b), or 1328(b) of this title does not discharge an individual

debtor from any debt for money, property, services, or an extension, renewal,

or refinancing of credit, to the extent obtained by:

   i: False pretenses, a false representation, or actual fraud, other than a

   statement respecting the debtor's or an insider's financial Condition;

34-     **WHEREFORE** Plaintiff prays that the Court deny Chugh's request to

discharge Plaintiff's debt as it was obtained fraudulently, knowing full

well that the commissions Chugh was assigning the Plaintiff had already

been cashed. Chugh intended to deceive the Plaintiff and thus the Court

should rule that Plaintiff's debt, which has been confirmed in a Court

12

judgement is non-dischargeable under the law.

## COUNT   2

### Court Should Deny Discharge as Chugh Filed False Schedules
### and Lied About His Income On Bankruptcy Form 107
### and Failed to Disclose Bank Accounts & a Gas Station Property

Plaintiff repeats and re-alleges paragraphs 1 through 30 of his complaint as though

fully set forth herein.

37-   On official form 107 which asks debtors to file a 'Statement of Financial Affairs

for individuals filing for Bankruptcy, Chugh in Part 2 lists his total income for

fiscal year 2020 as $13,699.20, which Chugh claims was all in Social Security

proceeds that Chugh received from the U.S. government. (Exhibit H: Form 107).

38-   Whereas during Supplemental Proceedings in Cook County, one of the respondents

namely 'Bulk Petroleum' while responding to the Plaintiffs Citation to discover Assets,

sent some documents and checks which shows that just from this source alone,

Chugh was paid a net amount of $23,692.28 which Chugh does not list nor

disclose on form 107. (Exhibit I). For 2020, Chugh also shows a self employment

income at $137,700.00 (Exhibit J: FORM SE: Chugh self employed income)

39-   Likewise Chugh also misrepresents his income for 2021. Exhibit K at page 22,

Chugh shows a taxable income of $142,800. In 2021 Chugh was also paid $13,846.14

by JJR Enterprises LLC. (Exhibit K: Page 25). Chugh did not disclose this income

and Schedules filed by Chugh in his petition do not list this income. Apart from that

an additional income of $6,153.84 paid to Chugh by Bulk Petroleum for fiscal 2021

is also not disclosed on his schedules. (Exhibit K: Page 26). Likewise for 2021 JT

Petroleum paid Chugh $19,999.98, which is also not disclosed on his schedules by

Chugh. (Exhibit K: Page 27). For fiscal 2022 likewise Chugh does not  disclose an

additional income of $10,800 from SUNOCO LLC. (Exhibit K: Page 38). Likewise

JT Petroleum Company paid Chugh an additional $2,615.38, which are also not

listed by Chugh on his bankruptcy schedules. (Exhibit K: Page 39).

40-   Chugh has certified that had a bank account that he maintained at Huntington

Bank. Statements produced by Chugh shows that Chugh used it merely to receive

his social security checks as the balance in that account is never more than $1000

to $1500 in any given month. Enclosed is a sampling of just few months of

statements showing these paltry deposits and withdrawals. (Exhibit L). In which

banks or financial institutions Chugh deposited  rest of the payments he received

for his investment advisory work, as indicated in his returns, is still concealed.

Despite repeated requests to disclose that information during supplemental

proceedings in Cook County, Chugh refused to name the bank where he

maintained his accounts and where he deposited hundreds of thousands of dollars

he earned as disclosed in his tax returns

41-   Statements produced by Chugh from Chase Bank just from one of his

accounts that Chugh maintained  under 410 LLC, an LLC that Chugh exclusively

owned and which Chugh primarily operated as his piggy bank for private expenses

are attached. The Chase bank account was opened by Chugh under the guise of the

410 LLC was being operated without any corporate formalities that Illinois Secretary of State and the Illinois financial regulations impose on such corporate or business accounts. The 410 LLC account statements for 2020 to 2023 show Exhibit M) that Chugh had substantial private and business income from his investment advisory work, which he has carefully concealed and failed to disclose in his bankruptcy schedules.

42-   According to Chugh's own sworn statements, he incorporated 410 LLC for the sole purpose of taking title of a gas station that he had purchased in Palatine, and according to Chugh's representations that he made in Sur-reply filed in this Court, that he could not open the gas station, and abandoned the project in 2018. (Exhibit N: Chugh's Sur-Reply page 2, Answer# 3). If indeed the 410 LLC was created to operate the gas station, which could not be opened, then why was 410 LLC not dissolved, unless the purpose was to launder other payments into that account for numerous other financial operations Chugh ran and has concealed from this bankruptcy court.

43-   Chugh's sworn statement in his sur reply is belied by the Illinois Secretary of State's document archives. Form LLC-5.5, which is filed to incorporate the LLC's in Illinois show that the 410 LLC was incorporated in 2019 and not in 2015. (Exhibit O). Co-incidentally Form LLC-5.5 also shows that Paul Chawla, Chugh's attorney representing him in bankruptcy proceedings filed the incorporation documents with the Secretary of State. Sworn sur reply was also

15

certified by Attorney Paul Chawla (Exhibit O, page 6) and it shows that either

Attorney Chawla is not doing appropriate due diligence required by attorneys

who file Bankruptcy petitions, or is helping Chugh, his twenty plus year old

client, conceal important information from the bankruptcy court and from the

Chugh's creditors.

44-    Chugh's sworn sur-reply also belies as to the gas station business, which

Chugh claims he could not open and thus abandoned the project in 2018. In

response to the document production request by the Plaintiff, Chugh in his

sworn response, which he filed under the penalty of perjury states that in

reality the gas station was closed by Chugh in 2019, and not in 2018.

(Exhibit P: Page 6).

Responses in Sur-reply and in the interrogatories, become even more bizarre

when one looks at the documents recorded with the Cook County Recorder of

deeds. Those recorded documents disclose that none of the sworn

representations in Sur-reply and interrogatories are truthful, as Chugh

purchased the gas station in 2019. (Exhibit R: Warranty deed). Every

representation made by Chugh in response to Plaintiff's interrogatories, and

sworn to by Chugh as being true, and under the penalty of perjury, are false,

deceptive and are merely meant to hide the truth. On top of that Chugh's

representations that Chugh does not own the gas    station anymore, are equally

16

untrue. Cook County Recorder's office still shows that Chugh's alter ego 410 LLC is still the owner of record of the gas station.

45-    City of Naperville issued tickets and citations on this gas station property to 410 LLC for code violations. It was learnt that Chugh himself appeared at the citation hearings in City Hall in Naperville and asked to have the citations dismissed. Despite Chugh's solicitations to dismiss the citations, the Administrative Judge fined the 410 LLC over five thousand dollars. Chugh did not pay the fine, and the City had to file a lien and record it with the Recorder's office in January 2025. (Exhibit S). The document clearly shows that 410 LLC is still the legal owner of the gas station, which Chugh continues to conceal. Above all Chugh failed to disclose this property on his bankruptcy schedules.

46-    Chugh's Bankruptcy Petition is filled with misrepresentations and falsehoods, which are material as to a very valuable asset. Plaintiff believes that Chugh is still running the gas station, either himself personally or on some third party's name, which could be his wife Vidhu or sons' Ankur or Ashwin.

## 410 LLC CHASE BANK DEPOSITS SHOW  INFUSION OF HUNDREDS OF THOUSANDS OF DOLLARS

47-    The Chase Bank statements show that in 2021 Chugh earned an net amount of $10,100.00 that he deposited in 410 LLC account.

48-    Chase Bank statements further show that Chugh earned over $91,011.00 in fiscal 2022 which Chugh deposited  in his 410 LLC account.

49-     Chase Bank statements also show that Chugh had also earned over $29,862 for

just first six months of 2023, starting from January till the end of June 2022.

Chugh deposited the earnings derived from his personal businesses in his 410

LLC account. (Exhibit M: Chase Bank Statements).

50     Plaintiff would like to point out further that Chugh failed to provide all bank

statements as requested by the Plaintiff during the supplemental proceedings in

Cook County, as many bank statements for 2021, 2022 and 2023 went missing

which Chugh decided to withhold from this Plaintiff, and it is feared that those

bank statements have definitely been destroyed.

50-     The sworn statements Chugh made while filing the bankruptcy schedules

were made by Chugh under oath. Chugh knew while certifying and swearing

under oath to the accuracy of schedules, that his statements were false and

Chugh also knew while responding to the interrogatories that what he was

representing in his answers was equally false.

51-     Chugh also lied on his bankruptcy schedules as to where he resides, and

provided an address where Chugh used to live over ten years ago. The

statements are material to the bankruptcy proceedings as it was going to

divulge the ownership of the residential property, where Chugh currently lives

as opposed to where he wanted the Court or his creditors to believe where he

lived. Chugh also lied as to the facts pertaining to the gas station and its

current ownership.

52-      The assets of the debtor are the linchpin of the bankruptcy proceedings and

hiding those assets are materially important in satisfying the debts of the

Creditors. If a debtor is successful in hiding his assets, it wipes out all

creditors' claims making those claims redundant.

Above all, Court should consider and take in account of the fact that Chugh is

not a novice and this is not Chugh's first bankruptcy, but rather his fourth. As

a seasoned serial filer, Chugh should have known how to fill bankruptcy

schedules and in addition lying, withholding, concealing, and engaging in

misrepresentations on those forms and schedules can prove fatal to one's

bankruptcy petition.

53-      11 U.S.C. § 727 - U.S. Code (a) (4) (A)  states that a debtor is not entitled to

discharge if:

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or

preserve any recorded information, including books, documents, records, and

papers, from which the debtor's financial condition or business transactions might

be ascertained, unless such act or failure to act was justified under the

circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case--

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or

(D) advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(E) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

54-    **WHEREFORE** in view of the above, Chugh who has submitted false

bankruptcy schedules, lied under oath about his place of abode, falsified,

withheld and concealed his income for the years 2020 to 2023, has lied to the

Court about the ownership of the gas station, that he was supposed to truthfully

disclose to this Court on his bankruptcy schedules, should be denied a discharge.

55-    It is also prayed that because of massive irregularities of running a corporate

or an LLC account as his personal piggy bank, an investigation into Chugh's conduct

will be quiet appropriate. Towards that end the Plaintiff prays that the Court issue an

order to pierce the veil, and ask that Chugh provide all missing bank and

corporate records, including proof and sources of his income that he deposited in

410 LLC account, and whether if he was complying with corporate formalities, or

410 LLC was merely a façade to hide his income stream.

## COUNT  3

### To Deflect Attention From his Opulent Lifestyle, Debtor Falsely
### Provided a Wrong Residential Address On His Petition For Bankruptcy

59-    Plaintiff re-incorporates article 1- 58 as if fully stated herein.

To deflect attention from his opulent lifestyle, and in an effort to camouflage

from the Trustee and his creditors, on his Chapter 7 petition for Bankruptcy

relief, debtor Chugh filed a sworn statement in which he falsified the place of

20

his abode. On official Form 309A. Under debtor's information, Chugh falsely

stated that he resides at 356 Trinity Lane, Oak Brook, Illinois. This is an old

address of the debtor, of a modest dwelling, where it is believed that the debtor

Chugh used to live prior to 2017. The reason for providing false address was not

to alert the Trustee or his Creditors, lest they start looking as to where the debtor

resides, and dig into the ownership interests of debtor, his wife and other

defendants Ankur and Ashwin.

60-    By providing false address and then certifying under oath that Chugh was telling

the truth and certifying the contents of his Chapter 7 bankruptcy petition, Chugh

is and was concealing a materially important fact which is to hide his residential

address and by not providing his actual address where he resides is an attempt to

conceal an asset, which is very valuable and which would have seeped suspicions

in Trustee's minds as to the Chugh's high end living and his certifications of not

owning or maintaining a bank account or any other valuable assets.

61-    Bankruptcy Code 727 (a) (4) (A) provides as follows:

(a) The court shall grant the debtor a discharge, unless—
(4) the debtor knowingly and fraudulently, in or in connection with
    the case:
(A) made a false oath or account;

62-    Chugh knowingly with a deceptive intent provided wrong address of his

residences. Chugh knew that the statements he was making were under

oath and under the penalty of perjury, but still went ahead and provided

false information to this Court.

**WHEREFORE**, the Plaintiff prays that this Court enter judgment in his favor and against the debtor, and declare that providing wrong addresses of his residence to deflect attention from his real place of abode and in an effort to deflect attention of the Creditors, the Court and the Trustee, the debtor Chugh is not entitled to a discharge under 727 (a) (4) (A).

## COUNT    4

## AVOIDANCE OF ALL FRAUDULENT TRANSFERS TO ANKUR,  VIDHU AND ASHWIN CHUGH WORTH OVER OF $140,000.00

75-    During the Supplemental Proceedings, Debtor Anil Chugh was asked to provide bank statements for his personal account as well as for 410 LLC, but Chugh only provided partial Bank statements. (Exhibits M & N), but withheld many others. Chugh was repeatedly asked about the missing statements, but he used different excuses to withhold those statements. It is believed that Chugh withheld and concealed over six months of bank statements, and it is feared that Chugh has deliberately <u>destroyed those statements.</u> Despite this, just partial bank statements for two odd years reveal that debtor deposited a net amount of $140,000.00 in cash in his LLC account that Chugh maintained under 410 LLC. It is believed that all $140,000.00 of it was fraudulently transferred by Chugh to his wife Vidhu, and his two sons Ankur and Ashwin's bank accounts'.

76-    Additionally Chugh hasn't provided full accounting of his bank accounts or businesses, which Chugh is running in his wife Vidhu and sons' Ankur and Ashwin's name.

77-    Chugh made the transfers from his 410 LLC account to these insiders with the actual

intent to hinder, delay or defraud individuals or entities to which the Debtor was

indebted or became indebted, on or after the dates such Transfers were made. The

Plaintiff obtained the judgement against Chugh in 2018, whereas the transfers to the

insiders were made subsequent to the judgment in 2020 to 2023.

78-    The Debtor did not receive reasonably equivalent value in exchange for the Transfers.

82.    The transfers were made to the insiders, including his wife and sons' Ankur and

Ashwin. These individuals are closely related to Chugh, and are insiders as defined

by Section 101(31) of the Bankruptcy Code as well as 740 ILCS § 160/2 (g)(2)

(c)).

79-    The Debtor was insolvent on the dates that the Transfers were made, or became

insolvent as a result of the Transfers; the Debtor was engaged in business or a

transaction, or was about to engage in business or a transaction for which any

property remaining with the Debtor was unreasonably small; or the Debtor intended

to incur, or believed that the Debtor would incur, debts that would be beyond the

Debtor's ability to pay as such debts matured, making Chugh insolvent.

80-    Illinois law considers a transfer made by a debtor to be fraudulent if it is intended to

avoid paying a creditor's claim. The Uniform Fraudulent Transfer Act (UFTA), 740

ILCS 140/1, aims to prevent and reverse these transfers. A transfer can be considered

fraudulent if the debtor: Intends to hinder, delay, or defraud his creditors. This could

include transferring assets to an insider, retaining possession of the transferred

property, or concealing the transfer.

23

The Defendants are either individual and or entities, respectively, from which

property is recoverable under Section 550 of the Bankruptcy Code as well as

IUFTA. (740 ILCS 140/1).

 The Defendants are transferees of the Transfers avoidable under Sections 547

and 548 of the Bankruptcy Code.

81-    Transfer of cash from Debtor's account to insiders constitutes Actual fraudulent

transfer and should be avoided pursuant to the Illinois UFTA and §544 of the

Bankruptcy Code and Illinois UFTA.

Transfer of cash from Debtor's account to insiders constitutes Constructive

fraudulent Transfer and should be avoided pursuant to Illinois UFTA and §544 of

the Bankruptcy Code and Illinois UFTA.

82-    Wherefore it is prayed that the Court avoid all transfers made by Chugh from

410 LLC account to his wife Vidhu and sons Anuk and Ashwin and order the

transferees to return the money for the benefit of the creditors.

## C O N C L U S I O N

83-    A discharge in bankruptcy proceedings is reward for an honest debtor who,

through no fault of his own, runs into unexpected, unanticipated hardships, and

being unable to pay his debts, dutifully follows the bankruptcy statutes and seeks

its protection to ward off his creditors. The framers of the Bankruptcy Code

never intended its protection for those who use it as a weapon to illegally stave

off their creditors and fraudulently move, conceal and hide their assets.

84-    Character is always an issue while judging the merits of a petitioner's

credibility. Court should take in account Chugh's conduct in which Chugh trapped a newly arrived immigrant and sold him a gas station, that he represented, he owned and deprived him of $100,000.00. Chugh didn't own that gas station, but showed his victim a gas station which belonged to one of his clients, representing as if *he* owned it. Then he turns around and extracts $200,000.00 from the Plaintiff and supposedly transfers and  assigns him the commissions on the sale of 29 gas stations, which Chugh had already received weeks before assigning those commissions to Plaintiff. Not only that, Chugh signed Power of Attorney and entered into an Affidavit swearing to his representations, that commissions were still owed to him.

88-   What has been discovered so far is the tip of the iceberg. An in-depth Discovery process will unearth massive fraud that Chugh has been perpetrating and thence shielding himself by repeatedly filing bankruptcies.

88-   In view of the above, it is prayed:

A: that Chugh should be denied discharge altogether and in particular Judgement debts owed to this Plaintiff

B : Court void fraudulent transfers and order Vidhu, Ashwin and Ankur to return in all, complete $140,000.00 that they were transferred by the Debtor.

D: Any other relief, including allowing discovery, to discover additional sums, bank accounts and properties Chugh is concealing from his creditors and from this Court.

Zafar Sheikh/Plaintiff
4619 Herzog Street,
Austin. TX. 78723.
Tele: (847) 414-9670
Zafarsheikh313@aol.com